UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RA'SHAUN MULLER,

                                    Plaintiff,

            vs.
                                                        9:02-CV-1556
ALT HOLMES, Housekeeping                                (J. Kahn)
Supervisor, Medical Unit;
MS. DUNCAN, Housekeeping
Supervisor, Medical Unit,

                                    Defendants.

_____

APPEARANCES                         OF COUNSEL

RA'SHAUN MULLER
Plaintiff pro se

ELIOT SPITZER                       DAVID L. FRUCHTER
Attorney General of the             Asst. Attorney General
State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

        In this civil rights complaint, plaintiff alleges that defendants retaliated against

him for filing grievances regarding his prison job assignment.

        Plaintiff seeks both monetary and injunctive relief.

Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 25). Plaintiff has responded in opposition to the motion. (Dkt. No. 27). Defendants have filed a reply. (Dkt. No. 31). For the following reasons, this court will recommend denying the summary judgment motion without prejudice.

## DISCUSSION

### 1. <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only

2

disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

**2.** **Facts**

It is undisputed that plaintiff began working as an inmate porter in the Medical Unit at Coxsackie Correctional Facility on November 13, 2000.  It is also undisputed that he worked in this capacity until October 14, 2001, when he was removed from the position.  It is also undisputed that plaintiff's hours and pay kept changing throughout the months that he worked in the Medical Unit.  The reasons for these changes, however, are disputed.

In his complaint, plaintiff alleges that when he began his assignment to the Medical Unit, he was scheduled to work during an "afternoon module" and an "evening module" for five days per week, totaling forty hours. Complaint ¶¶ 3-5. Plaintiff seems to claim that each "module" lasted four hours. *Id.* ¶ 5.  Plaintiff claims that instead of working only five days per week, he worked seven days per week, however, when he reviewed his first month's pay statement, he realized that although he was working seven days per week, he was still only being paid for five days per week. *Id.* ¶ 4.  Plaintiff states that he immediately brought this information to defendant Holmes's attention, but that as a result of this oral complaint, his pay was

3

lowered even more. *Id.* ¶ 6.

Plaintiff states that although in February 2001, he received a favorable job evaluation, his pay continued to go down. *Id.* ¶¶ 8-9. Plaintiff claims that this decrease in wages was, and could "only" be, due to his filing formal complaints. *Id.* ¶ 9. Plaintiff also alleges that each time he filed a complaint, not only did defendant Holmes retaliate against plaintiff, but that defendant Holmes "encouraged" defendant Duncan, the daytime supervisor, to engage in similar retaliation. *Id.* ¶ 10. Plaintiff states that every time defendant Duncan was questioned by the Inmate Grievance Committee, Duncan would state that plaintiff was being paid for ten more hours than he was actually working, first stating that he was being paid for forty hours when he only worked thirty, then stating that plaintiff was being paid for thirty hours when he only worked twenty. *Id.* ¶ 12-13.

Plaintiff also claims that these defendants improperly removed plaintiff from his job in the Medical Unit. Plaintiff admits that he was removed from his position due to a misbehavior report that was filed against him and a disciplinary sentence that he had to serve in keeplock, however, he claims that in removing plaintiff from his job, defendants improperly relied upon a facility memorandum to do so, and that the real reason was retaliation for his complaints. *Id.* ¶¶ 15-17. Plaintiff states that after serving his 30 day keeplock sentence, he was transferred to the housing unit where the

4

hospital workers lived and stayed there until defendants were advised that plaintiff was back and ready to return to work. *Id.* ¶ 18.

Plaintiff claims that upon discovering that plaintiff had completed his disciplinary sentence, defendant Holmes spoke with defendant Duncan and told her that plaintiff wrote too many grievances, and that Holmes did not want plaintiff back working in the Medical Unit. *Id.* ¶ 19. Plaintiff claims that Ms. Duncan then wrote or telephoned the Program Committee, stating that she wanted plaintiff removed from the job. *Id.* ¶ 20. Plaintiff states that he was removed from the job at Duncan's request. *Id.* Finally, plaintiff claims that the retaliatory actions by defendants Holmes and Duncan "forced" plaintiff into a "less desirable job." *Id.* ¶ 23.

Defendant Holmes has submitted an affidavit, stating that he was plaintiff's supervisor and was responsible filling out plaintiff's "Wage Time Sheets." These Wage Time Sheets report the number of hours an inmate works and form the basis for an inmate's "payroll". Holmes Aff. ¶ 6. (attached to Dkt. No. 25). Defendant Holmes states that plaintiff was initially assigned to a forty hour work week, with a pay rate of .2416 dollars per hour. *Id.* ¶ 7. Holmes states that plaintiff was initially paid for forty hours per week because that was his assignment, although plaintiff never actually worked forty hours per week. *Id.* ¶ 8. Defendant Holmes states that in January of 2001, Holmes began reporting that plaintiff was only working thirty hours per week

5

because that was "a more accurate reflection" of the number of hours that plaintiff actually worked per week. *Id.* ¶ 9.

Defendant Holmes then states that in February of 2001, Holmes reduced plaintiff's hours to twenty hours "at plaintiff's request." *Id.* ¶ 10. Defendant Holmes also states that he gave plaintiff a favorable work evaluation in February of 2001, and that as a result, plaintiff's hourly rate of pay was increased to .2583, effective March 1, 2001. *Id.* ¶ 11 & Ex. B. Defendant Holmes states that "sometime in March of 2001," Holmes was directed by "his supervisor" to raise plaintiff's work hours to thirty hours per week "though plaintiff was still only working 20 hours per week." *Id.* ¶ 12.

Holmes states that in May of 2001, plaintiff filed Grievance CX-8228-01, in which he complained that he was not being paid properly. *Id.* ¶ 13. Holmes states that the investigation into plaintiff's grievance revealed that plaintiff was being paid for thirty hours per week when he was only working twenty hours per week. *Id.* ¶ 13 & Ex. C. Defendant Holmes claims that as a result of this investigation, Holmes was directed by former Deputy Superintendent of Programs, Reinaldo Medina, to make sure that inmates (in general) were only being paid for hours that they "actually worked". *Id.* ¶ 14. Thus, defendant Holmes states that he had to reduce plaintiff's hours from thirty to twenty, since plaintiff was "actually" working only twenty hours

6

per week. *Id.*  Finally, defendant Holmes states that throughout the period that he supervised plaintiff, any decrease in the hours that Holmes reported on the Wage Time Sheet as worked by plaintiff was "solely a reflection of the actual hours worked by plaintiff." *Id.* ¶ 15.

Defendant Duncan has also submitted an affidavit in support of defendants' motion for summary judgment. (Attached to Dkt. No. 25).  In that affidavit, Ms. Duncan states that she is also a Housekeeping Supervisor at Coxsackie Correctional Facility. Duncan Aff. ¶ 4.  Defendant Duncan works from 7:30 a.m. until 3:30 p.m., and her duties involve supervising the inmate porters in the Medial Unit who are scheduled to work on the "day shift." *Id.* ¶¶ 4-5.  Defendant Duncan states that she has neither met, nor has she ever supervised plaintiff. *Id.* ¶ 6.

Although defendant Duncan states that she is aware that plaintiff was scheduled to work evenings in the Medical Unit, Duncan had ***no control*** over plaintiff's work hour or his wages. *Id.*¶¶ 7-9.  Defendant Duncan states that she never had any discussions with defendant Holmes, in which defendant Holmes complained about plaintiff, and defendant Duncan claims that she did not request that plaintiff be removed from his job assignment. *Id.* at ¶ 11.  Defendant Duncan states that a supervisor cannot make a request that an inmate be removed from a program assignment unless the inmate received a misbehavior report or was not performing his

job satisfactorily. *Id.* ¶ 12.

Defendants have also submitted the affidavit of Mary Bailey, a Senior Counselor at Coxsackie Correctional Facility. (Attached to Dkt. No. 25). She states that it is "facility policy" that any inmate who receives a disciplinary penalty of fifteen or more days of keeplock confinement will automatically be removed from his program assignment. Bailey Aff. ¶ 4. She further states that plaintiff in this case received a thirty day keeplock penalty as the result of a September 7, 2001 misbehavior report. *Id.* ¶ 5. Plaintiff was removed from his assignment on October 14, 2001, and his inmate records state that he was removed for "poor attendance, participation, or progress." *Id.* ¶¶ 6-7. Senior Counselor Bailey states that although the reason listed on plaintiff's records does not appear to be the reason that plaintiff was actually removed from his assignment, he would have been removed from that assignment based on the disciplinary penalty, "regardless of any other reason that could have caused his removal." *Id.* ¶ 8.

Finally, defendants have submitted the affidavit of Karen Bellamy, the Assistant Director of the Inmate Grievance Program for the Department of Correctional Services (DOCS). (Attached to Dkt. No. 25). Ms. Bellamy states that she has reviewed plaintiff's grievance records and has determined that the Central Office Review Committee (CORC) in Albany received two grievances filed by plaintiff relating to his

8

job assignment. Bellamy Aff. ¶ 4.  Ms. Bellamy refers to plaintiff's May 24, 2001 grievance complaint CX-8228-01, complaining that he had been denied wages and requesting that his monthly account statements from November 2000 until May 2001 be reviewed. *Id.* ¶ 5 & Ex. A.  In that grievance, plaintiff also requested any back pay that was due to him as a result. *Id.*

The facility Inmate Grievance Review Committee (IGRC)[1] determined that plaintiff should receive back pay for the months of February and March 2001. *Id.* ¶ 6 & Ex. A.  Plaintiff appealed this finding, and on June 5, 2001, the Superintendent accepted the grievance to the extent that plaintiff could receive back pay for any time during which he worked, but did not receive pay. *Id.* ¶ 7 & Ex. B.  Plaintiff appealed to the CORC, and on July 11, 2001, the CORC issued a decision, upholding the Superintendent's determination and finding that plaintiff had received program pay for the hours he had worked on his assigned job. *Id.* ¶ 8.

Ms. Bellamy also states that as a result of the investigation relating to plaintiff's grievance, a memorandum, dated July 11, 2001 was sent from Thomas Eagen, the Director of the Inmate Grievance Program, to Coxsackie Superintendent Filion. *Id.*

---

[1] When an inmate files a grievance, the IGRC reviews the complaint initially and makes a determination.  Plaintiff can either agree or disagree with the IGRC determination and appeal any portions of the decision with which he disagrees to the Superintendent of the facility.  After the Superintendent makes a decision, the inmate may appeal to the CORC in Albany.

¶ 9.  The memorandum noted that although plaintiff had been assigned to two three-hour modules, he was only working and receiving pay for twenty hours per week. *Id.* It was also noted that plaintiff's hours and pay were increased to thirty hours, but that plaintiff was still only working twenty hours. *Id.*  The memorandum then stated that the CORC "asserts that an inmate should only receive pay for hours worked." *Id.* ¶ 9 & Ex. D.

Ms. Bellamy states that as a result of the July 11, 2001 CORC memorandum, Superintendent Filion wrote a memorandum to all department heads at Coxsackie Correctional Facility, stating that they must ensure that the inmate payroll is accurate, and that inmates are only paid for the hours that they actually work. *Id.* ¶ 10 & Ex. E. Ms. Bellamy states that plaintiff filed another grievance on November 19, 2001, (CX-8584-01), claiming that the actions taken by defendants Holmes and Duncan were discriminatory and retaliatory. *Id.* ¶ 11.  Plaintiff alleged that he had been wrongfully removed from his program assignment and requested back pay for the months of March and August 2001. *Id.* ¶ 11 & Ex. F.

The IGRC recommended that plaintiff receive his back pay, but also stated that inmates who receive a disciplinary keeplock penalty of 30 days or more are "automatically" removed from their program assignment. *Id.* ¶ 12 & Ex. G.  Plaintiff appealed to the Superintendent, and on December 3, 2001, the Superintendent found

that plaintiff was properly removed from his program assignment due to the keeplock penalty, and that he could receive back pay to the extent that the staff deemed it was appropriate. *Id.* ¶ 13 & Ex. H.

Plaintiff appealed the Superintendent's decision, and on January 30, 2002, the CORC determined that plaintiff was properly removed from his work assignment due to the 30 day keeplock penalty. *Id.* ¶ 14 & Ex. I.  The CORC also found that plaintiff was entitled to back pay for certain pay periods in August and September of 2001. *Id.* As a result of this CORC decision, a memorandum was sent to Superintendent Filion explaining the decision and requesting notification that the action directed by the CORC had been taken. *Id.* ¶ 15 & Ex. J.  On February 15, 2002, Superintendent Filion notified the CORC that plaintiff had been given $ 15.50 in back pay. *Id.* ¶ 16 & Ex. J.

## 3.   **Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.*

(citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[2]

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted).  Additionally, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  In *Gill*, the court held that this objective test applied, even where a particular plaintiff was **not subjectively deterred** and continued to file grievances and lawsuits. *Id.*

Finally, even if plaintiff can show that plaintiff's protected conduct was a motivating factor in the defendants' adverse action, defendants may evade liability by showing that plaintiff would have been disciplined even in the absence of the

---

[2] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002).  The decision in *Phelps* resulted from a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the court was considering only the face of the complaint.  This case comes before the court upon a motion for summary judgment, thus, this case is distinguishable from a situation in which only the complaint is being examined.

protected conduct. *Bennett*, 343 F.3d at 137 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

In this case, plaintiff has two claims of retaliation, first he claims that his hours were reduced after he complained about working overtime and not being paid. Second, plaintiff claims defendants' retaliated against him by removing him from his job. The problem in this case is that although defendants have come forward with affidavits and some documents, plaintiff has also submitted documents showing that some of defendants' statements may not be accurate.

Plaintiff alleges that his hours and pay were changed because he filed grievances complaining about his wages in relation to the hours that he worked. Defendants state that in *January* of 2001, defendant Holmes reduced the number of hours that he was reporting that plaintiff worked from forty to thirty because thirty hours was a more accurate reflection of the number of hours that plaintiff actually worked, and that in February, Holmes further reduced plaintiff's hours to twenty hours per week at *plaintiff's request*. Holmes Aff. ¶¶ 7, 8-10.   However, there are *no documents* to substantiate this statement, and plaintiff denies that he was working fewer hours. In fact, plaintiff alleges that, initially, he was being called in to work more than forty hours per week, but not being paid for the extra time.  Plaintiff claims that this "overtime" was the reason for his initial grievance.

13

Defendants allege that plaintiff filed a grievance on *May* 16, 2001. Bellamy Aff. ¶ 5.  Defendants never mention any prior grievances.  However, plaintiff has submitted documentation from a grievance that he filed a grievance in *January* of 2001, complaining that he was working seven days per week, but only getting paid for five days. Plaintiff's Exs. F-G.  *January* of 2001 is when defendant Holmes states that he reduced plaintiff's hours because he was not actually working forty hours per week. While a *disagreement* over the number of hours plaintiff was working or a *disagreement* over his pay would not be a constitutional issue, if defendant Holmes reduced plaintiff's hours in January *because of the grievance that he filed* complaining about these hours, a constitutional claim could be stated.  So, while plaintiff was complaining that he was working more than forty hours and not being paid for the overtime, defendant Holmes claimed that plaintiff was not even working forty hours.

The problem is that defendants never mention plaintiff's January grievance, and instead state that plaintiff filed a grievance in May of 2001.  Since the temporal proximity of the adverse action to the protected action may establish the causal connection required to show retaliation,[3] the fact that plaintiff filed a grievance much

---

[3] *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001).

closer to the time that the adverse action was alleged to have happened, could make a difference in this case.  The court would also point out that none of the weekly time sheets discussed by defendant Holmes as the basis for the reduction of hours and pay have been included in the exhibits.[4]  Although defendant Holmes states that plaintiff requested a reduction in hours in February of 2001 (Holmes Aff. ¶ 10), plaintiff denies ever requesting this reduction (Muller Rule 7.1 Statement ¶ 9; Muller Aff. ¶¶ 22, 23), and there is no basis for making this determination other than the sworn statements of each person.  Based on all the exhibits submitted with both parties' papers, it is clear that there were discrepancies in the amount of hours worked and the amount of pay plaintiff received.

It also appears from the memoranda sent from the CORC back to the facility, that the CORC determined that inmates, in general, may have been being paid for hours that they did not work. Holmes Aff. Ex. C at pp.5-7.  Plaintiff did ultimately obtain some back pay, however, for hours that he worked in August and September of 2001 for which he was not paid properly. Bellamy Aff. Ex. J.  Additionally, it is true that plaintiff was recommended for a raise in pay in February of 2001, although from

---

[4] Although defendants do not state the reason for the failure to include this information, the court notes that plaintiff's exhibits contain a Freedom of Information response, indicating that defendant Holmes does not retain the payroll sheet indefinitely, and that the sheets from November 22, 2000 to September 5, 2001 had already been destroyed. Plaintiff's Ex. 6 (after Ex. Z).

one of plaintiff's grievances, it appears that he also claimed he was not receiving the increased salary. Holmes Aff. Ex. B (pay increase recommendation), Ex. C. (plaintiff's May 2001 grievance).

This court cannot make a proper determination on summary judgment with respect to plaintiff's first claim of retaliation based upon the information that has been provided. Although defendants do have exhibits that weigh in their favor, some of the discrepancies prevent this court from recommending that summary judgment be granted in their favor.

One of plaintiff's bases for retaliation, however, may be dismissed. Plaintiff was removed from his job on October 14, 2001. Plaintiff alleges that defendants removed him from his job because of his grievances and because he was a "trouble maker." Defendants claim that plaintiff was removed from his job because he was found guilty after a disciplinary hearing and was sentenced to thirty days keeplock. Plaintiff concedes that he was found guilty of misbehavior after a disciplinary hearing and was sentenced to thirty days keeplock, but claims that he should not have been removed from his job because of this.

Defendants claim that Coxsackie Correctional Facility had a policy that inmates sanctioned with a penalty of fifteen days or more keeplock confinement are *automatically* removed from their assigned programs, and that plaintiff would have

16

been removed from his job regardless of any retaliatory motive.  As stated above,
defendants may avoid liability by establishing that the adverse action would have been
taken regardless of any retaliatory motive. *See Bennett*, 343 F.3d at 137.  Plaintiff has
submitted a June 7, 2000 memorandum to all security staff and department heads of
Coxsackie from the Deputy Superintendent of Security and the Deputy Superintendent
of Programs of Coxsackie, stating the ways in which an inmate may be removed from
his job. Plaintiff's Ex. C.

In this memorandum, the relevant section indicates that in order to be removed
for disciplinary reasons, the misbehavior must be "work related" *Id.*  The section also
states that an inmate who received a penalty of thirty or more days keeplock penalty
will be automatically removed from his job.  Since this subsection occurs under the
heading "Misbehavior (work related), plaintiff alleges that in order for him to have
lost his job under that section, his misbehavior would have to have been "work
related."

Plaintiff has submitted copies of his misbehavior report indicating that the
misbehavior was not work related. Plaintiff's Ex. 5 (after Ex. Z).  However, there was
***another*** memorandum, dated September 21, 2001 from the Superintendent of
Coxsackie Correctional Facility. Plaintiff's Ex. D.  This memorandum was addressed
to the "Inmate Population" and simply stated that

17

> Inmates who as a result of a disciplinary hearing are found guilty and
> have sanctions of 15 days keeplock or more will be removed from their
> assigned programs and replaced by inmates who are on the waiting list or
> otherwise unassigned.

Plaintiff's Ex. D.  This memorandum does not specify that the misbehavior must be

work-related, and it can certainly be interpreted as applying to ***any*** misbehavior report.

Plaintiff does not dispute the existence of this memorandum, since he has submitted it

to the court, however, he claims that since his misbehavior report predated the

memorandum, this policy should not have applied to him, and that instead, its

application to him is further evidence of retaliation.

Unfortunately, plaintiff's argument in this instance is unavailing.  Although the

memorandum is dated September 21, 2001, and plaintiff's misbehavior report was

dated September 7, 2001, plaintiff was ***still serving*** his thirty day keeplock sentence

when the new memorandum was issued, and thus, it can be argued that the

memorandum did apply to plaintiff.  Thus, plaintiff's removal from his job cannot

form the basis for any part of plaintiff's retaliation claim, since plaintiff could have

been removed from his position based on facility policy regardless of any retaliatory

motive for his removal.

This is particularly so since the memorandum stated that removal based on a

fifteen day or longer sentence was ***automatic***.  The court also notes that plaintiff has

submitted a copy of what appears to be a manual for the implementation of procedures at Coxsackie Correctional Facility. Plaintiff's Ex. 7 (after Ex. Z). This manual states that policies and procedures are effective the date they are signed and shall be implemented immediately. *Id.*  Since plaintiff was still serving his disciplinary sentence when the September 21, 2001 policy was signed, it is reasonable to assume that the policy would have been applicable to plaintiff, even though the misbehavior report itself was issued prior to September 21, 2001.  Unless plaintiff can show that other inmates who were already serving sentences of fifteen days or more when the memorandum was signed were not removed from their jobs, then plaintiff cannot show retaliation.[5]

Finally, defendants allege that defendant Duncan was not plaintiff's supervisor, had no control over plaintiff's work hours, and had nothing to do with removing plaintiff from his job assignment.  Defendant Duncan has submitted an affidavit in support of the summary judgment motion. Duncan Aff. (attached Dkt. No. 25). Although defendant Duncan alleges that she had no control over plaintiff's wages or work hours, and did not request his removal from the Program Committee, plaintiff

---

[5] Although in his responsive memorandum of law, plaintiff alleges that other inmates who served keeplock time were not removed from their programs (plaintiff's Memorandum of Law at p.11), plaintiff cites no specific instances, nor does he allege that the inmates were serving the keeplock time when the September 21, 2001 memorandum was issued.

has submitted an exhibit, which consists of a "Program Change Form", changing

plaintiff's program from Medical Services to "Unemployed", signed by Mary Bailey,

Senior Counselor at Coxsackie Correctional Facility. Plaintiff's Ex. 3 (after Ex. Z).

This exhibit contains a notation that the program change was "per supervisor Ms.

Duncan."

Although the court has found that plaintiff could have been removed from his

job automatically after the disciplinary sentence as stated above, the court is

concerned that defendant Duncan's affidavit discusses the fact that she never

requested the Program Committee to remove plaintiff from his job, and then explains

how that procedure would take place, when this plaintiff was allegedly removed from

his job automatically.  While it may be true that she never requested the ***Program***

***Committee*** to remove plaintiff from his job, that was not necessary in plaintiff's case,

and she apparently ***did request*** the program change.  Because of this inaccuracy, this

court will not recommend granting summary judgment in defendant Duncan's favor

since it is clear that she did have ***some*** involvement in plaintiff's case.

## 4.   Injunctive Relief

In plaintiff's complaint, he requested injunctive relief in the form of

reinstatement to his job at the same rate of pay.  However, plaintiff has been

transferred out of Coxsackie Correctional Facility, and any claim for injunctive relief

may be dismissed as moot. *See Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 25) be **GRANTED**, only to the extent that plaintiff seeks relief for the removal from his job and to the extent that he requests injunctive relief, and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 25) be **DENIED IN ALL OTHER RESPECTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 2, 2005

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge