**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RA'SHAUN MULLER,**

                **Plaintiff,**

     -against-                                                              **02-CV-1556**

**ALT HOLMES, Housekeeping Supervisor,**
**Medical Unit;  MS. DUNCAN, Housekeeping**
**Supervisor, Medical Unit;**

                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiff commenced this action *pro se* pursuant to 42 U.S.C. § 1983 contending that Defendants violated his rights under the First Amendment by retaliating against him with regard to his prison employment after he filed grievances in the prison grievance system. See Compl. [dkt # 1].  Following a decision on Defendants' motion for summary judgment that narrowed the issues in dispute, see Dec. & Order [dkt. # 37], the case was tried before a jury on March 24 and 25, 2008.  After being charged on the law and deliberating approximately one hour, the jury returned a verdict for Defendants. See 3/25/08 Minute Entry [dkt. # 127].  Plaintiff now moves for a new trial, contending that he was denied a fair trial because "the Court improperly instructed the jury and failed to

1

correct the verdict sheet," and because the Court failed to use Plaintiff's 102-question written juror questionnaire. See Motion for New Trial [dkt. # 134]. Plaintiff also argues that the verdict is unsupported by the evidence. Id. Defendants have opposed the motion. See Mem L. in Opp. [dkt. # 138]. For the reasons that follow, the motion is denied.

## II.     STANDARD OF REVIEW

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or  . . . the verdict is a miscarriage of justice." DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998)(quotation marks and citation omitted). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." Id.

"Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious." Id. (internal citations and quotations omitted). Therefore, "a court should rarely disturb a jury's evaluation of a witness's credibility." Id. (internal citations and quotations omitted).

## III.     DISCUSSION

### a.     Written Juror Questionnaire

Plaintiff argues in his reply papers that his written juror questionnaire was necessary to allow "prospective jurors . . . to be free from the peer pressures unavoidably involved with open court *voir dire*" and thus obtain an impartial jury. Reply ¶ 1. The Court disagrees.

"[F]ederal judges have been accorded ample discretion in determining how best to conduct the *voir dire*." Rosales-Lopez v. United States, 451 U.S. 182, 189, 101 S. Ct. 1629, 68 L.Ed.2d 22 (1981)(plurality opinion). "The questioning of potential jurors on *voir dire* is . . . quintessentially a matter for the discretion of trial courts." United States v. Lawes, 292 F.3d 123, 128 (2d Cir. 2002).  While juror questionnaires are sometimes utilized (usually in cases in which anonymous juries are empaneled or which involve sensitive subject matters, see United States v. Tomero, 486 F. Supp.2d 320, 324-25 (S.D.N.Y. 2007), United States v. Harding, 273 F. Supp.2d 411, 429 & n. 99 (S.D.N.Y. 2003)), they are not required simply because a litigant requests them. Tomero, 486 F. Supp.2d at 325; Harding, 273 F. Supp.2d at 429.  "Moreover, a district court has broad discretion whether to pose a [party's] requested *voir dire* questions." Lawes, 292 F.3d at 128.

The subject matter of the instant case was such that prospective jurors could be expected to openly discuss their views and positions on relevant issues.  Indeed, Plaintiff cites in his reply papers the conflicting responses of two prospective jurors on the same subject - one who was of the view that "prisoners should not be paid at all" for their work in

3

prison, and one who thought "inmates are not paid enough." Reply ¶¶ 2, 11.  Plaintiff has failed to demonstrate that prospective jurors could not openly discuss their views relative to this case.  See Harding, 273 F. Supp.2d 411, 429  ("In this case, Harding has failed to demonstrate that use of a written questionnaire is necessary to elicit honest and frank responses from prospective jurors concerning their ability to be fair and impartial when evaluating evidence concerning, for example, child pornography and homosexuality."). There is no basis upon which to conclude that the procedure used for the selection of the jury in this case resulted in anything other than a fair and impartial jury.  Therefore, the motion on this ground is denied.

### b. Improper Jury Instructions

Plaintiff also argues that the jury instructions were improper and that, therefore, he must be given a new trial.

A charge conference, attended by Plaintiff (who was proceeding *pro se*), Plaintiff's stand-by counsel, and Defendants' counsel, was held prior to the close of evidence and closing arguments.  The Court had prepared a charge based on the parties' "requests to charge" and the applicable law.  The Court reviewed the prepared charge with the parties, including reading to them the substantive portions of the charge.   At the conclusion of the conference, the Court asked for objections to the charge.  Plaintiff, through his stand-by counsel, objected to the portion of the charge

> with respect to the status of the defendants as supervisors on the ground that that is not an issue of the case; there's no claim against anyone other than the two defendants, and they're not being called upon to answer for the conduct of others. So the issue of respondeat superior, qualified immunity, none of that comes in.

Trans. p. 91.  Defendants' counsel agreed, and the charge was amended accordingly.  No other objections were interposed by Plaintiff.  Id.

After charging the jury and excusing the jurors from the Courtroom, the Court asked for "[q]uestions, exceptions, deletions, emendations not already expressed on the record." Id. p. 150.  Plaintiff objected to the entire charge, stating: "[it's] confusing, so long that it's confusing." Id.  The objection drew laughter from the courtroom, and the objection was seconded by defense counsel.  Id.  The Court "sustained" the objection in a light-hearted manner, but then explained to Plaintiff that (1) the charge was one of the shortest charges the Court had ever given, (2) written copies of the charge would be sent into the deliberation room to alleviate any confusion the jury might have from having the charge read to them, and (3) the content of the charge was appropriate in light of applicable law.  Id. pp 150-151.  Plaintiff now contends that the Court erred by sustaining his objection but refusing to re-charging the jury.

Objections to jury charges are governed by Fed. R. Civ. P. 51.  Rule 51 provides in pertinent part:

**(c) Objections**.

> (1) **How to Make**. A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection.
>
> (2) **When to Make**. An objection is timely if:
>
>> (A) a party objects at the opportunity provided under Rule 51(b)(2); or
>>
>> (B) a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after

5

>>learning that the instruction or request will be, or has been, given or refused.

Fed. R. Civ. P. 51(c).

Plaintiff was informed of the contents of the charge at the charge conference, and, therefore, his objection does not fall within the scope of Fed. R. Civ. P. 51(c)(2)(B). Rule 51(b)(2) requires that objections to jury instructions be made "before the instructions and arguments are delivered." Fed. R. Civ. P. 51(b)(2). Thus, under Fed. R. Civ. P. 51(c)(2)(A), Plaintiff's objection to the length and clarity of the charge had to be specified at the charge conference. Because this objection was not interposed until after the charge was read to the jury, it was untimely under Fed. R. Civ. P. 51(c)(2).

Fed. R. Civ. P. 51(d)(1) provides that a party "may assign as error: (a) an error in an instruction actually given, if that party properly objected." As indicated above, Plaintiff did not properly object to the length or clarity of charge. Nonetheless, under Fed. R. Civ. P. 51(d)(2) a "court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Here, the Court does not find plain error in the instructions that affected Plaintiff's substantial rights. As determined by the Court when Plaintiff first interposed his objection to the entirety of the charge, the charge stated the applicable legal rules concisely and was presented to the jury a manner that reasonably allowed the jurors to apply the legal rules to the facts as they found them to be. Accordingly, Plaintiff's motion for a new trial on this ground is denied.

### c.     Improper Verdict Form

Plaintiff also contends that he is entitled to a new trial because the second question on the Jury Verdict Form, which was addressed to Defendants' mixed motive affirmative defense, was confusing.  Plaintiff properly preserved this objection because it was interposed as soon as he reviewed the verdict sheet. See Trans. p. 150, 153.  However, the jury never reached the second question. See Jury Verdict [dkt. # 129].  Rather, the jury answered "NO" to Question 1 of the Verdict Sheet Form which asked:

> 1.     Do you find by a preponderance of the evidence that the plaintiff was wrongfully denied inmate wages by either defendant, in retaliation for plaintiff's exercise of his first amendment rights?

Id.

The instructions on the Verdict Sheet Form following Question 1 made clear that the Jury did not need to proceed to Question 2 if it answered "NO" to Question 1.  See id.[1] Therefore, assuming *arguendo* that Question 2 was confusing, the objection to Question 2 is immaterial because the jury never reached that question. The motion for a new trial on this ground is denied.

### d.     Verdict Supported by the Evidence

Plaintiff argues that the verdict is unsupported by the evidence.  The Court disagrees.

---

[1] These instructions indicated:

**If your answer to Question 1 is "NO," you should render a verdict in favor of the defendants and sign and date this form.  If your answer to Question 1 is "YES," proceed to Question 2.**

7

Plaintiff contented that, in retaliation for his filing of prison grievances, Defendants downwardly adjust the hours credited to him for his work on the evening housecleaning staff at the Coxsackie prison infirmary. Defendant Holmes

> testified, fundamentally, that he was merely attempting to bring the hours "credited" to the evening shift workers into alignment with the actual number of hours that they worked. He indicated that in one instance the plaintiff had asked for a reduction of hours (and in fact the plaintiff's grievance of January 16, 2001 seeks just that relief); in another, he had been told by the Deputy Superintendent for Programs to pay the inmates on the evening shift only the hours they actually worked; and that on August 10, 2001 the Superintendent had issued a facility-wide memorandum advising that inmates were only to be paid for the hours they actually worked. It was completely undisputed – and no doubt this was an important fact in the jury's deliberations – that the plaintiff and the others on his shift at no time actually worked more than 28 hours per week (4 hours/day, 7 days/week from November, 2000 to January 2001) and that for most of the period relevant to this case, they worked no more than 20 hours per week (4 hours/day, 5 days/week from January 2001 to September, 2001). Mr. Holmes denied that his actions were motivated by an intent to retaliate against plaintiff for filing grievances . . . .

Def. Mem. L. p. 10.

The Court agrees with Defendants' overview of the testimony of Defendant Holmes. The jury was entitled to credit Defendant Holmes's testimony as credible. Based upon this assessment, the jury could reasonably have determined that Defendant Holmes's actions were not motivated by an unconstitutional consideration. Thus, the verdict as to Defendant Holmes was supported by the evidence and the Court finds the verdict in this regard is not egregious or a miscarriage of justice.

Defendant Duncan "denied supervising the plaintiff, or having any role in determining his hours, or of even having met the plaintiff before she saw him in the

8

courtroom on March 24, 2008.  Plaintiff admitted on cross examination that he had never before met Ms. Duncan either." Def. Mem. L. p. 10.  Again, the Court agrees with Defendants' overview of the testimony relative to Defendant Duncan.  Accordingly, the verdict as to Defendant Duncan is amply supported by the evidence and not open to challenge on this motion.

Therefore, Plaintiff's motion on this ground is denied.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for a new trial [dkt. # 134] is **DENIED.**

**IT IS SO ORDERED**.

DATED:  July 11, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

9